# In the United States Court of Federal Claims

No. 16-912L and
No. 16-1565L and No. 18-375L Consolidated
No. 18-983L
(Filed: May 8, 2020)

_____

)
PERRY LOVERIDGE, et al.,    )
)
           Plaintiffs,    )
)
v.    )
)    Motion for Summary Judgment; Rails-
THE UNITED STATES,    )    to-Trails; Oregon Law; Scope of
)    Easements.
           Defendant.    )
)
_____  )
)
ALBRIGHT, et al.,    )
)
           Plaintiffs,    )
)
and    )
)
THE UNITED STATES,    )
)
           Defendant.    )
)
_____  )
)
STIMSON LUMBER COMPANY,    )
)
           Plaintiff,    )
)
and    )
)
THE UNITED STATES,    )
)
           Defendant    )
_____  )

*Thomas S. Stewart*, Kansas City, MO, for *Loveridge* and *Stimson Lumber* plaintiffs.
*Elizabeth G. McCulley*, Kansas City, MO, of counsel.

*Meghan S. Largent*, St. Louis MO, for *Albright* plaintiffs. *Lindsay S.C. Brinton*, St. Louis MO, of counsel.

*James H. Hulme*, Washington DC for *Aeder* plaintiffs. *Laurel LaMontagne*, *Morgan Pankow*, Washington DC, of counsel.

*David W. Gehlert*, Environment and Natural Resources Division, United States Department of Justice, Washington DC, with whom was *Prerak Shah*, Acting Deputy Assistant Attorney General, for defendant.

## OPINION

**FIRESTONE**, *Senior Judge*.

## I.      INTRODUCTION

Now pending in these Trails Act[1] cases are the parties' cross-motions for partial summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC") filed by the plaintiffs in *Albright v. United States*, *Aeder v. United States*, *Loveridge v. United States*, *Stimson Lumber v. United States*, and the United States (the "government").[2] At issue in the pending motions is the scope of 13 easements that plaintiffs' predecessors had provided to the Port of Tillamook Bay Railroad

---

[1] The Trails Act "preserve[s] shrinking rail trackage by converting unused rights-of-way to recreational trails." *Presault v. I.C.C.*, 494 U.S. 1, 5 (1990). The court's prior opinion contains an extensive explanation of the Trails Act. *See Loveridge v. United States*, 139 Fed. Cl. 122, 127-29 (2018).

[2] The pending motions involve plaintiffs in *Albright* (Case No. 16-1565L), *Aeder* (Case No. 18-375L), *Loveridge* (Case No. 16-912L), and *Stimson Lumber Co.* (Case No. 18-983L). Only the *Albright* and *Aeder* cases have been consolidated. *See Aeder*, Case No. 18-375L, ECF No. 10. However, because all four cases concern the same segments of railroad, involve many of the same deeds, and present overlapping arguments, the court is issuing a single opinion. *See Loveridge v. United States*, 139 Fed. Cl. 122, 127 n.1 (2018).

("POTB"). The Pacific Railway & Navigation Company ("Railroad") originally owned the relevant portions of the railway line, but the POTB eventually took ownership of the railroad line. *See Loveridge v. United States*, 139 Fed. Cl. 122, 129 (2018), *recons. partially granted*, 2019 WL 495578 (Feb. 8, 2019). A hiking trail, the Salmonberry Trail, is in development on the railway. *Loveridge*, 139 Fed. Cl. at 129.

Originally, 132 deeds were at issue in these cases. The parties agreed that 18 deeds granted fee simple interests to the POTB and 12 deeds conveyed easements. Of the remaining 102, the court ultimately determined that 89 conveyed a fee simple interest such that POTB owned the property and could transfer its rights to the trail operator of the Salmonberry Trail, without giving rise to a takings claim. *Loveridge*, 139 Fed. Cl. at 196; *Loveridge*, 2019 WL 495578 at *64. The court eventually determined that the remaining 13 source deeds conveyed easements, and that, therefore, plaintiffs claiming title under these 13 deeds had a potential claim for compensation based on the Notice of Interim Trail Use ("NITU") issued by the federal government pursuant to the National Trails System Act, 16 U.S.C. § 1247(d) to allow for creation of the Salmonberry Trail.

The pending motions for partial summary judgment concern 11 of the 13 deeds that the court determined conveyed easements and 1 deed which the parties previously agreed conveyed an easement but for which the parties now disagree on the scope of the easement. The plaintiffs argue that the terms of the 12 source deeds now at issue limit the easements to "railroad purposes," and therefore, the government interfered with their reversionary interests in the easements by issuing a NITU allowing for the Salmonberry

Trail. Plaintiffs thus contend that the United States is liable for a taking of their reversionary interest and for imposing a new trail easement on their land.

The government argues that the 12 source deeds are broad enough to encompass the rail banking and trail use authorized by the NITU. Under the government's reading of the deeds, issuance of the NITU did not trigger the plaintiffs' reversionary interests and plaintiffs are not entitled to compensation for a taking of their reversionary interest or for use of the property as a trail.[3]

For the reasons discussed below, the parties' cross-motions are **GRANTED-IN-PART** and **DENIED-IN-PART**.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As discussed in the court's prior decisions, these cases involve a nearly 80-mile railroad right of way in Oregon established in 1907 by the Railroad and later obtained by POTB. On July 26, 2016, the Surface Transportation Board ("STB"), an agency of the United States, issued a NITU authorizing railbanking and allowing a trail operator, the Salmonberry Trail Intergovernmental Agency, to establish the Salmonberry Trail along the railway. A railbanking and trail use agreement between POTB and the Salmonberry

---

[3] The parties agree that railbanking and interim trail use is outside the scope of the easement in the following deeds: Alley 9/537, Cummings 79/381, Denni 75/372, Hammond Lumber 23/308, Kilches River Co. 31/228, Kinney 13/196, Larsen 5/133, Miami Lumber Co. 27/440, Smith, Alfred 13/313, Tucker 12/331, Whitney Co. Ltd. 7/84, Jones 94/226, and Portland Timber 107/61. *See Loveridge*, 139 Fed. Cl. at 130; *Albright* Def.'s Reply at 1 n.1 (Jones 94/225); Tr. 53:3-8 (*Albright*, ECF No. 150) (government agreeing that the Portland Timber 107/61 deed (Albright ECF No. 120-6 at 3) has "clear limitation language"). As such the government's motion regarding the scope of the Portland Timber 107/61 deed is **DENIED**.

Trail Intergovernmental Agency regarding the relevant railway corridor was entered on October 27, 2017.

In 2017, the parties filed cross-motions for summary judgment regarding 132 deeds. (*Albright*, ECF Nos. 20, 24; *Loveridge*, ECF Nos. 27, 34). The parties eventually agreed on the nature of 30 of these 132 deeds, and these initial cross-motions focused on, among other areas of dispute, whether the POTB's right of way under the remaining 102 deeds was granted in fee or was an easement, whether railbanking and trail use were within the scope of the easements, and the appropriate means of calculating just compensation. For case management purposes, the court first addressed whether the express source deeds conveyed fees or easements. The court's findings of fact and conclusions of law are set forth in its first opinion issued on August 13, 2018. *Loveridge*, 139 Fed. Cl. 122.  The court concluded that 93 of the deeds conveyed a fee interest to the POTB.

The plaintiffs moved for reconsideration regarding 57 of the deeds. (*Albright*, ECF No. 58; *Loveridge*, ECF No. 55). The court issued its opinion on reconsideration on February 8, 2019, in which the court granted the plaintiffs' motion regarding 4 of the deeds. Thus, the court ultimately concluded that 89 deeds conveyed fees and 13 conveyed easements.[4]

---

[4] The plaintiffs in *Albright, Aeder,* and *Loveridge* appealed to the United States Court of Appeals for the Federal Circuit this court's judgment regarding 26 of the source deeds that the court determined conveyed fee interest title to the POTB. Fed. Cir. Case Nos. 19-2078, 19-2080, 19-2316. These appeals are currently pending.

Following the court's ruling on reconsideration, the parties renewed their motions for partial summary judgment regarding the issues remaining before the court. *Albright*, ECF Nos. 118 (Albright plaintiffs), 119 (Aeder plaintiffs), 120 (government); *Loveridge*, ECF Nos. 91 (Loveridge plaintiffs), 94 (government). The government in *Stimson Lumber* also filed a motion for partial summary judgment regarding the scope of easements. *Stimson Lumber*, ECF No. 24.[5]

The 12 source deeds now before the court are: Carstens 72/530, Turner 72/528, Wright-Blodgett 15/493, Wright-Blodgett 105/393, Hannan 72/549, Byrom 5/310, Wheeler 16/2, Beals Land Co. 18/41, DuBois Lumber Co. 23/298, Mendenhall 72/550, Western Timber 77/108, and Brighton Mills 58/292.

The partial summary judgment motions regarding the scope of easements in *Albright* and *Aeder* concern the Carstens 72/530, Turner 72/528, Wright-Blodgett 15/493, Wright-Blodgett 105/393, and Hannan 72/549 source deeds and involve 12 plaintiffs. *Albright*, ECF No. 120.

The partial summary judgment motions regarding scope of easements in *Loveridge* concern the Byrom 5/310, Wright-Blodgett 15/493, Wright-Blodgett 105/393, Brighton Mills 58/292, Wheeler 16/2, Beals 18/41, DuBois Lumber Co. 23/298, Mendenhall

---

[5] Although the court's opinions were issued regarding claims brought by plaintiffs in *Albright, Aeder,* and *Loveridge*, the parties in *Stimson Lumber* agreed that pursuant to the court's opinions, six parcels in the *Stimson Lumber* case should be dismissed. *See Stimson Lumber*, J. Status Rep. at 1-2 (ECF No. 19). The court subsequently dismissed the claims associated with those parcels. *Stimson Lumber*, July 2, 2019 Order (ECF No. 21).

72/550, and Carstens 72/530 source deeds and involve 19 plaintiffs. *Loveridge*, ECF No. 94.

The summary judgment motions regarding the scope of easements in *Stimson Lumber* concern the Western Timber Co. 77/108, Dubois Lumber Co. 12/298, and Wright-Blodgett 105/393 source deeds and involve 7 plaintiffs.[6] *Stimson Lumber*, ECF No. 24.

Briefing on the motions, including supplemental briefing, was completed on April 3, 2020. The court held oral argument on April 23, 2020.

## III.   SUMMARY JUDGMENT STANDARDS

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that movant is entitled to judgment as a matter of law." RCFC 56(a). A genuine dispute is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor, and a material fact is one that could affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Questions of law are particularly appropriate for summary judgment." *Oenga v. United States*, 91 Fed. Cl. 629, 634 (2010) (citing *Dana Corp. v. United States*, 174 F.3d

---

[6] The court's previous rulings on and the text of 11 of these source deeds can be found in the court's prior decisions, and the court will not include the deed language here. *See Loveridge*, 139 Fed. Cl. at 142 (Carstens 72/530); *id.* at 185-86 (Turner 72/528); *id.* at 194-96 (Wright-Blodgett 15/493 and Wright-Blodgett 105/393); *id.* at 145-47 (DuBois Lumber Co. 23/298); *id.* at 167-68 (Mendenhall 72/550); *id.* at 188-89 (Western Timber 77/108); *Loveridge*, 2019 WL 495578 at *54-55 (Hannan 72/549); *id.* at *50 (Beals Land Co. 18/41); *id.* at *58 (Wheeler 16/2); *id.* at *59 (Byrom 5/310). The parties agreed that 1 deed, the Brighton Mills 58/292 deed, conveyed an easement. *Loveridge*, 139 Fed. Cl. at 130. The text of the Brighton Mills 58/292 deed is attached to this opinion.

1344, 1347 (Fed. Cir. 1999) ("Summary judgment was appropriate here because no material facts were disputed, many being stipulated, and the only disputed issues were issues of law.")). "The interpretation of a deed is a question of law for the court." *Whispell Foreign Cars, Inc. v. United States*, 100 Fed. Cl. 529, 540 n.12 (2011) (citation omitted).

## IV.   OREGON LAW

This court applies the law of the applicable state to determine the scope of source deeds. *Rogers v. United States*, 814 F.3d 1299, 1305 (Fed. Cir. 2015). Here, plaintiffs' property is in Oregon, and therefore, Oregon property law is controlling. The Oregon Court of Appeals recently addressed the rules for interpreting the scope of an easement in *Tressel v. Williams*, 420 P.3d 31, 35 (Or. Ct. App. 2018).[7] *See also Eugene Water & Elec. Bd. v. Miller*, 417 P.3d 456, 462 (Or. Ct. App. 2018) (providing the same framework). This framework will be applied to determine the scope of the 12 easements at issue in this case.

Under Oregon law, "[t]he interpretation of an express easement is a question of law." *Tressel*, 420 P.3d at 35. In interpreting an express easement, the court's "fundamental task is to discern the nature and scope of the easement's purpose and to give effect to that purpose in a practical manner." *Tressel*, 420 P.3d at 35 (quoting

---

[7] In *Tressel*, the court concluded that where an easement's language requiring the defendant to provide the plaintiff with "[a]ccess for ingress + egress" to her property and "remote control + code for gate" was read in context, the language was unambiguous and had the purpose of providing "ingress and egress to plaintiff's property over and across defendant's driveway." *Tressel*, 420 P.3d at 36.

*Watson v. Banducci*, 973 P.2d 395, 400 (Or. Ct. App. 1999)); *Eugene Water*, 417 P.3d at 461-62; *see* Or. Rev. Stat. § 42.240 ("In the construction of an instrument the intention of the parties is to be pursued if possible.").

"When interpreting an express easement, the court must 'look first to the words of the easement, viewing them in the context of the entire document.'" *Tressel*, 420 P.3d at 35 (quoting *Kell v. Oppenlander*, 961 P.2d 861, 863 (Or. Ct. App. 1998)); *see Tipperman v. Tsiatsos*, 964 P.2d 1015, 1019 (Or. 1998) ("[i]t is the duty of the court to declare the meaning of what is written in the instrument") (quoting *Minto v. Salem Water Etc. Co.*, 250 P. 722 (Or. 1926)).  In general, "the scope of an easement is not limited to the uses contemplated to be made at the time of . . . its creation" unless "language of the creating instrument or the attendant circumstances at the time of the grant" indicate the parties' intended to limit the scope of the easement. *See Eugene Water*, 417 P.3d at 462 (quoting *Jones v. Edwards*, 347 P.2d 846, 848 (Or. 1959)).[8]

"The document also must be considered in the context of 'the circumstances under which it was made, including the situation of the subject and of the parties,' so that 'the judge is placed in the position of those whose language the judge is interpreting.'" *Tressel*, 420 P.3d at 35 (quoting *Miller v. Jones*, 302 P.3d 812, 815 (Or. Ct. App. 2013)); *see* Or. Rev. Stat. § 42.220 ("In construing an instrument, the circumstances under which

---

[8] At issue in *Eugene Water*, was whether gravel removal was consistent with an easement which was provided for the protection of the salmon migration. *Id.* at 459. The court found that the utility company did not exceed the scope of its easement by removing gravel from the area of the easement because gravel removal was necessary to provide adequate water flow for fish migration. *Id.* at 460.

it was made . . . may be shown so that the judge is placed in the position of those whose language the judge is interpreting.").

The analysis ends if in context, the words of the easement "clearly express the easement's purpose." *Tressel*, 420 P.3d at 35 (quoting *Watson*, 973 P.2d at 400); *Eugene Water*, 417 P.3d at 462 ("The terms of an unambiguous easement will generally define its intended purpose"). However, under Oregon law if "an easement is granted in general and unlimited terms, unrestricted reasonable use will be deemed to be intended by the parties." *Criterion Interests, Inc. v. Deschutes Club*, 902 P.2d 110, 113 (Or. Ct. App. 1995), *op. adhered to as mod. on reconsideration*, 903 P.2d 421 (Or. Ct. App. 1995); *see Kalfas v. Adams*, 306 P.3d 706, 714 (Or. Ct. App. 2013) (finding that "although the easement's provisions are exceptionally broad, they are also clear and unambiguous, so the trial court should not have relied on the circumstances surrounding the document's execution to determine the meaning of 'existing roads'"); Or. Rev. Stat. § 42.230 (in interpreting a written instrument the judge is "not to insert what has been omitted, or to omit what has been inserted"). In *Criterion Interests*, the court was tasked with interpreting a deed stating that "the use of the area . . . shall be restricted to passage way over the same for purposes of ingress to and egress from . . . by any means of transportation, but that in no way shall the same be held out to the public as a public way . . . ." 902 P.2d at 111. The court concluded that the scope of the deed was "unrestricted reasonable use" because the "purposes for which the grantee may invoke its right to access are unambiguously left unrestricted." *Id.* at 113.

Where the language in the express easement is ambiguous, the court may consider "extrinsic evidence of the original parties' intent." *Tressel*, 420 P.3d at 35 (quoting *Watson*, 973 P.2d at 400)); *see Tipperman*, 964 P.2d at 1019 ("the court will look beyond the wording of the instrument only where there is an uncertainty or ambiguity") (citation and quotation omitted). If ambiguity remains after considering the extrinsic evidence, Oregon courts "employ relevant maxims of construction as a last resort." *Tressel*, 420 P.2d at 35 (citing *Cascade v. Georgia-Pacific*, 314 P.3d 311, 321 (Or. Ct. App. 2013)); *see Tipperman*, 964 P.2d at 1015.

Once the scope of the easement is identified, courts must then determine whether the proposed use exceeds the scope of the easement. Ordinarily, "an easement grantee has only 'those rights that are necessary for the easement's reasonable and proper enjoyment.'" *Tressel*, 420 P.3d at 35 (quoting *Watson*, 973 P.2d at 400); *see Eugene Water*, 417 P.3d at 459 ("easement rights are limited to uses that are 'reasonably necessary' to accomplish the easement's intended purpose") (citing *D'Abbracci v. Shaw-Bastian*, 117 P.3d 1032 (Or. Ct. App. 2005)); *Tipperman*, 964 P.2d at 1022 (concluding that the construction of an additional fence was permitted because it was reasonable in connection to the easement's purpose). The Oregon Supreme Court has recognized that "the grantee may avail himself of modern improvements which will enable him to enjoy more fully the rights which were granted." *Bernards v. Link*, 248 P.2d 341, 349 (Or. 1952), *adhered to on reh'g sub nom.*, *Bernards v. E.J. Link*, 263 P.2d 794 (1953).

In cases where the scope of the easement is plainly unrestricted, courts are tasked with determining whether the new use is reasonable and will not substantially increase

the burden on the grantor. *See Motes v. PacifiCorp*, 217 P.3d 1072, 1078 (Or. Ct. App. 2009) (an easement holder may "change the use of its easement so long as it does not substantially increase the burden on the servient estate") (quotation and citation omitted); *see Costifas v. Conrad*, 905 P.2d 851, 853 (Or. Ct. App. 1995) (substantial interference involves more than petty annoyance). This means that "there may be an increase in the volume and kind of use of such an easement during the course of its enjoyment." *Long v. Sendelbach*, 641 P.2d 1136, 1338 (Or. Ct. App. 1982). Although specific to the circumstances, at some point the new use may increase the burden to such a degree that it exceeds the scope of even an unrestricted easement. *See Jones v. Edwards*, 347 P.2d 846, 849 (Or. 1959).

## V.    DISCUSSION

It is against the backdrop of Oregon law that the court now turns to each of the deeds in dispute. The court addresses the deeds with similar relevant language together.

### A.    The Carstens 72/530 and Turner 72/528 Source Deeds

The Carstens 72/530 and Turner 72/528 deeds contain habendum clauses[9] which both state "TO HAVE AND TO HOLD, all and singular, the said premises together with the appurtenances unto the said party of the second part and unto its successors and assigns *as long as used and operated for railway and transportation purposes*." *Loveridge*, 139 Fed. Cl. 141-42 (Carstens 72/530) (emphasis added); *id.* at 185-86 (Turner 72/528) (emphasis added).

---

[9] The habendum clause is the part of a deed or other instrument "that defines the extent of the interest being granted and any conditions affecting the grant." *Black Law Dictionary* 788 (9th ed. 2009).

The plaintiffs argue that the language "as long as used and operated for railway and transportation purposes" sets forth the intended use of the land for construction and operation of a railroad. *Albright* Pls.' Resp. at 6 (ECF No. 125); *see Loveridge* Pls.' Resp. at 23-24 (ECF No. 98). The plaintiffs contend that because the easements are limited to railroad purposes, railbanking and recreational trail use are outside this limited scope. *Albright* Pls.' Resp. at 7-9. The plaintiffs argue that the term "transportation" in the habendum clause does not authorize use of the rail line for trail use because trail use is inconsistent with rail use and is not a "transportation" purpose. They contend that the term "transportation" in Oregon law is limited to the transport of goods in commerce. *Id.* at 9 (citing *Boyer v. United* States, 123 Fed. Cl. 430, 441 (2015)), and further argue that under Oregon law walking or hiking along rail lines was expressly forbidden and thus could not have been a contemplated use of these easements. *Id.* at 9-10 (citing *Ward v. S. Pac. Co.*, 36 P. 166, 168-69 (Or. 1894)).

The government responds that while the Carstens 72/530 and 72/528 deeds may limit the use of the subject rail line property, the reference to "transportation purposes" in the deeds is sufficiently broad to include both railbanking and trail use. *Albright* Def.'s Reply at 2-3 (ECF No. 130) (citing Def.'s Mot. Ex. 2(a) and 2(c)). In particular, the government argues that railbanking and trail use are plainly within the scope of "transportation purposes."

As discussed above, in construing an easement, the court must "discern the nature and scope of the easement's purpose and to give effect to that purpose in a practical manner." *Tressel*, 420 P.3d at 35 (quoting *Watson*, 973 P.2d at 400). Where the words of

the deed "clearly express the easement's purpose," the analysis ends. *Watson*, 973 P.2d at 400. Here, the court finds the deeds contain a clear statement of purpose; namely the deeds explicitly convey easements for a "railway and transportation purpose."

Having identified the easement's purpose, the court turns to whether railbanking and trail use are within the scope of this purpose. In Oregon, the "grantee [of an easement] has only 'those rights that are necessary for the easement's reasonable and proper enjoyment.'" *Tressel*, 420 P.3d at 35 (quoting *Watson*, 973 P.2d at 395); *see Eugene Water*, 417 P.3d at 459 (the scope of the deed which identifies a purpose includes that which is "'reasonably necessary' to accomplish the easement's intended purpose"); *Tipperman*, 964 P.2d at 1022.

Here, the parties do not dispute that railbanking and trail use are not reasonably necessary to accomplish "railway purposes" and are therefore outside the scope of the "railway purposes" portion of the easements.[10] However, the parties disagree as to whether railbanking and trail use fit within the scope of "transportation" purposes. In deciding whether "transportation" purposes include the trail use authorized by the NITU, the court is charged with placing itself "in the position of those whose language [the court] is interpreting." *See Tressel*, 420 P.3d at 35 (quoting *Miller*, 302 P.3d at 815 and *Kell*, 961 P.2d at 863); *see* Or. Rev. Stat. § 42.220 ("In construing an instrument, the

---

[10] Indeed, the government has previously agreed that "railbanking and trail use are outside the scope" of other easements that "are limited to railroad purposes." *See Loveridge*, 139 Fed. Cl. at 130.

circumstances under which it was made . . . may be shown so that the judge is placed in the position of those whose language the judge is interpreting.").

When placing itself in the position of the parties, the court finds that "transportation" as used in these easements includes only commercial transportation consistent with railway use, and not use of the easement for recreational foot traffic. The easements identify their use as for "railway and transportation purposes."  Because both purposes appear together, "transportation" must be read in the context of the "railway" purpose of the easements. *See Tressel*, 420 P.3d at 35 (holding that the court must consider language in the "context of the entire document"). Therefore, the court here reads transportation to include the type of unobstructed transportation corridors consistent with commercial railway use rather than a recreational use. As the plaintiffs argue and as this court has previously held, under Oregon law, "easements granted to [a] railroad more than 100 years ago would not have contemplated public recreational use" of a railway because "Oregon law clearly states that rail traffic and pedestrian or cycling uses within the same space are incompatible." *Boyer v. United States*, 123 Fed. Cl. 430, 441 (2015). Indeed, since 1894, the Oregon Supreme Court has recognized that a railroad easement is incompatible with a "footpath." *See Ward v. S. Pac. Co.*, 36 P. 166, 168-69 (Or. 1894) ("The track is the private property of the company and was not built to be used as a highway for pedestrians"). Thus, the court finds that these easements were intended to allow for commercial transportation use, consistent with the purposes of rail

transportation. *See Bernards*, 248 P.2d at 349 (holding that a commercial logging road was within the scope of a commercial logging railroad easement).[11]

In this connection, the court finds the government's characterization of the Salmonberry Trail as primarily a transportation-oriented trail to not be persuasive. *See Albright*, Def.'s Reply at 5. The Federal Circuit has already rejected the connection between public trails and "unobstructed transportation corridors." *See Presault v. United States*, 100 F.3d 1525, 1554 (Fed. Cir. 1996) (Rader, J. concurring) ("Realistically, nature trails are for recreation, not transportation."). As the Federal Circuit noted in its opinion in *Toews v. United States*, 376 F.3d 1371 (Fed. Cir. 2004), even where an easement granted to a railroad could include other "methods for public transport . . . a public transportation easement defined as one for railroad purposes is not stretchable into an easement for a recreational trail and linear park for skateboarders and picnickers." 376 F.3d at 1379. While the *Toews* decision applied California law, the government has not provided any cases in Oregon or elsewhere that indicate that foot traffic is incorporated into the scope of an easement granted to a railroad for railway and transportation purposes.

---

[11] The conclusion also applies to railbanking under the Trails Act which only occurs where the railway is to be used for interim trail use. *See Caldwell v. United States*, 391 F.3d 1226, 1229 (Fed. Cir. 2004) ("If the railroad and the trail operator indicate a willingness to negotiate a trail use agreement, the STB stays the abandonment process and issues a notice allowing the railroad right-of-way to be 'railbanked.'"); *see also Chicago Coating Co. v. United States*, 892 F.3d 1164, 1167 (Fed. Cir. 2018) ("Railbanking maintains the STB's jurisdiction . . . but allows a third party to . . . convert the corridor into a recreational trail.").

In view of the foregoing, the court rejects the government's reliance *Criterion Interests* to argue that a change in use from railroad-based transportation to trail-based transportation is "reasonable" under Oregon law. *Albright* Def.'s Reply at 7-8. In *Criterion Interests*, the court held that the changed use of the dominant estate was permissible where, although "the use permitted by the easement is limited to access," the "purposes for which the grantee may invoke its right to access are unambiguously left unrestricted." 902 P.2d at 113. Specifically, the court in *Criterion Interests* found that a deed that broadly authorized "access," while originally used for agricultural purposes, could be later used for recreational purposes, on the grounds that there was no language in the deed limiting access for agricultural purposes only. *Id.* The government argues the same reasoning should be applied here where the easements originally used for railway transportation that other uses such that railbanking and trail use should also be permissible. However, the court concludes that the source deeds here set forth an express limited railway and commercial transportation purpose, not broad, unrestricted "access." The court must therefore consider whether the changed uses are within the scope of these limited purposes and finds that they are not.

The court also rejects the government's argument that railbanking and trail use are "modern improvements" of railway and transportation such that they would fit within the reasoning of *Bernards,* 248 P.2d at 349. In *Bernards*, the Oregon Supreme Court determined that conversion of a rail line used to transit timber to a trucking line used to transit timber was an advance in the technology of shipping and thus consistent with the parties' original intent to allow for the transit of goods. Here, unlike in *Bernards*,

transportation by foot does not qualify as a technological advancement over railroad transportation.

In sum, the court finds, as a matter of Oregon law that the easements conveyed to the railroad for "railway and transportation purposes" in the Carstens 72/530 deed and Turner 72/528 deed do not include within their scope railbanking and trail use. Therefore, the court grants the plaintiffs' motions for partial summary judgment that railbanking and trail use are outside the scope of the Carstens 72/530 and Turner 72/528 source deeds and denies the government's motions.

### B.     The Byrom 5/310 Source Deed

The Byrom 5/310 deed contains a habendum clause which conveys "All tide lands . . . . To Have and to Hold onto the said Pacific Railway and Navigation Company, and to its successors and assigns forever; Together *with the right to build, maintain and operate thereover a railway and telegraph line*." *Loveridge*, 139 Fed. Cl. at 139 (emphasis added).

The plaintiffs argue that the deed's language "with the right to build . . . . a railway" is a statement of purpose and that "there is no reason . . . such language would be included if the railroad had the right to use the property for any purpose." *Loveridge* Pls.' Resp. at 12. The government contends that the above-quoted language is "broad and unambiguous and does not impose limits on the use of the land being conveyed that preclude railbanking and trail use." *Loveridge* Def.'s Mot. at 5; *Loveridge* Def.'s Reply at 2 n.2 (citing *Loveridge*, 139 Fed. Cl. at 133) (ECF No. 106).

As discussed, under Oregon law, the court is tasked with "discern[ing] the nature and scope of the easement's purpose and to give effect to that purpose in a practical manner." *Tressel*, 420 P.3d at 35 (quoting *Watson*, 973 P.2d at 400). A clear expression of purpose ends the analysis of the language. *See Watson*, 973 P.2d at 400. Here, the easement itself explicitly identifies the purpose as "the right to build, maintain and operate thereover a railway and telegraph line." *See Loveridge*, 139 Fed. Cl. at 139. This language is precise, unambiguous, and "clearly express[es] the easement's purpose" for both railroad and telegraph line purposes. *See Watson*, 973 P.2d at 400.[12]

Having identified that the Byrom 5/310 deed conveyed an easement for railroad and telegraph line purposes, the court next considers whether railbanking and trail use are reasonably necessary to accomplish these purposes. *See Tressel*, 420 P.3d at 35 (quoting *Watson*, 973 P.2d at 395); *Eugene Water*, 417 P.3d at 459; *Tipperman*, 964 P.2d at 1022. As discussed with the Carstens 72/530 and Turner 72/528 deeds, there is no dispute that railbanking and trail use are not reasonably necessary for railroad purposes. The court also finds that railbanking and trail use are not related to the use of the easement for operation of telegraph lines, let alone reasonably necessary for telegraph line purposes.

---

[12] The court's determination of the purpose of the Byrom 5/310 deed is consistent with the court's prior analysis determining whether this deed conveyed a fee or an easement. The court previously explained that the deed's language confirming that the land "can be used for railroad purposes does not limit the railroad's use to only railroad purposes" where multiple uses are identified in the deed. *See Loveridge*, 139 Fed. Cl. at 139. The court rejects the plaintiffs' argument that the easement limits use to *only* railroad purposes, where another purpose – to operate telegraph lines – is identified.

Finally, the court finds that railbanking and trail use are not technological advancements of either the railroad or telegraph line purpose explicitly identified in the deed. *See Bernards*, 248 P.2d at 349-50. Therefore, railbanking and trail use are not uses to which the grantee is entitled. The court finds that under Oregon law, railbanking and trail use are outside the scope of the Byrom 5/310 deed. The government's motion for partial summary judgment regarding this deed is denied, and the plaintiffs' motion for partial summary judgment is granted.

### C.   The Wright-Blodgett 15/493, Wright-Blodgett 105/393, and DuBois Lumber Co. 23/298 Source Deeds

Both the Wright-Blodgett 15/493 and Wright-Blodgett 105/393 deeds contain language stating that the easements are provided with "the express understanding and condition that the grantor reserves to itself . . . the right to construct across the strip of land herein conveyed and across the railway of the grantee . . . a logging railroad." *See Loveridge*, 139 Fed. Cl. at 194 (Wright-Blodgett 15/493); *id.* at 194-95 (Wright-Blodgett 105/393). The deeds also explain that the logging railroad's operation cannot "interfere with the operation by the []grantee of its railway over said strip of land." *Id*. Similarly, the DuBois Lumber Co. 23/298 deed reserved to the grantor "the right to construct across the land above conveyed and across the railway track of the grantee to be constructed thereon, a logging railroad," and that the "operation of said logging road . . . at no time [could] interfere with the operation by the grantee of its railway over the above described lands." *Id.* at 146.

The plaintiffs argue based on the language pertaining specifically to the operation of a railroad and the easement language pertaining to a narrow strip of land, that these deeds clearly indicate that the easement's scope was limited to railroad purposes. *Albright* Pls.' Resp. at 5-6; *Loveridge* Pls.' Resp. at 14, 18, 21-22; *Stimson Lumber* Pls.' Resp. at 12-15 (ECF No. 26).

The government argues that while the "use of the term 'railway' may indicate that the grantors intended to convey easements as opposed to fee title the term merely describes one use of the Railroad's easement and does not limit the range of uses that may be permissible." *Albright* Def.'s Reply at 4. Therefore, the government argues that the source deeds do not contain limiting language pertaining to the easement's scope and thus the deeds are broad enough to encompass railbanking and trail use. *Id.*

The court begins, as before, by looking at the language in the deed to determine the easement's purpose. *Tressel*, 420 P.3d at 35 (quoting *Watson*, 973 P.2d at 400). In doing so courts require consideration of the "reservation or express grant" language in the deed. *Tipperman*, 964 P.3d at 1019. Under Oregon law, the court views any relevant language in the context of the entire document and from the circumstances under which it was made. *Tressel*, 420 P.3d at 35.  Where there is clear purpose language, it is controlling. *See Watson*, 973 P.2d at 400.

Thus, the question before the court is whether the language in Wright-Blodgett 15/493, Wright-Blodgett 105/393, and DuBois Lumber Co. 23/298 source deeds referencing the intended use of the easement as a railroad indicates that easements were limited to only railroad purposes. Viewing the deeds' language as a whole, the court finds

that the easements did have a railroad purpose and for that reason sought to limit the grantors' rights. In its earlier opinion this court found that the deeds included "purpose language or limiting language." *See Loveridge*, 139 Fed. Cl. at 195. Therefore, the court concludes under Oregon law the easements were conveyed for railroad purposes.

Having identified the deeds conveyed easements for railroad purposes, the court considers whether railbanking and trail use is within the deeds' scope. *See Tressel*, 420 P.3d at 35 (quoting *Watson*, 973 P.2d at 395); *Eugene Water*, 417 P.3d at 459; *Tipperman*, 964 P.2d at 1022. The court concludes railbanking and trail use are not reasonably necessary to accomplish railroad purposes. As discussed above, it was understood at the time these easements were issued that a foot path would be inconsistent with railroad purposes. Finally, the court again finds that railbanking and trail use are not technological advancements of a railroad such that the new use could be considered consistent with the easements' purpose. *See Bernards*, 248 P.2d at 349-50. As such, the plaintiffs' motions for partial summary judgment are granted and the court finds that railbanking and trail use is not within the scope of the Wright-Blodgett 15/493, Wright-Blodgett 105/393, and DuBois Lumber Co. 23/298 source deeds. The government's motions for partial summary judgment regarding the scope of these deeds are denied.

### D.   The Brighton Mills 58/292 Source Deed

The Brighton Mills deed 58/292 states that Brighton Mills "agreed to sell and convey to the South Pacific Company . . . real property hereinafter described, and WHEREAS, pursuant to said agreement said Southern Pacific Company entered upon the said premises and constructed . . . a portion of its railroad tracks on its through line

between Tillamook and Portland, Oregon, and ever since has occupied and used said premises for railroad purposes" the grantors "do hereby grant, bargain, sell, and convey unto [the Railroad], its successors, and assigns that certain real property situated in the County of Tillamook and State of Oregon described as follows . . . together with all the tenements, hereditaments and appurtenances thereonto belonging or in anywise appertaining." *Loveridge* Def.'s Mot. Att. 2(c) (ECF No. 94-4).

The plaintiffs argue that because this deed "specifically states that the corridor has been occupied and used 'for railroad purposes' up to 1926," the deed states that the easement is limited to railroad purposes. *Loveridge* Pls.' Resp. at 16. The government argues that the above language is broad, unambiguous, and does not impose limits on the use of the land which preclude railbanking and trail use. *Loveridge* Def.'s Mot. at 5.

As stated earlier, in interpreting the easement's language, the court's "task is to discern the nature and scope of the easement's purpose and to give effect to that purpose in a practical manner." *Tressel*, 420 P.3d at 35 (quoting *Watson*, 973 P.2d at 400). Any relevant language must be viewed "in the context of the entire document." *Id*. In addition, the easement "must be considered in the context of the circumstances under which it was made . . . so that the judge is placed in the position of those whose language the judge is interpreting." *Id.* Here, the language of the deed explains the circumstances under which the deed was made. Namely, the grantor agreed to provide an easement, and pursuant to that agreement, the Railroad "entered upon the said premises and constructed . . . a portion of its railroad track . . . and ever since has occupied and used said premises for railroad purposes." *Loveridge* Def.'s Mot. Att. 2(c). This language makes clear that

23

grantor and grantee understood the easement was granted for railroad purposes. The court concludes that the deed's language unambiguously limits the use of the easement to railroad purposes.

Having determined the scope of the easement, the court turns again to whether railbanking and trail use are within the scope of railroad purposes or reasonably necessary to accomplish the railroad purpose. *See Tressel*, 420 P.3d at 35 (quoting *Watson*, 973 P.2d at 395); *Eugene Water*, 417 P.3d at 459; *Tipperman*, 964 P.2d at 1022. As discussed above, railbanking and trail use are outside the scope of an easement limited to railroad purposes. Nor are railbanking and trail use technological advancements of the railroad use identified in the deed. *See Bernards*, 248 P.2d at 349. Therefore, the court finds that railbanking and trail use are inconsistent with the scope of the Brighton Mills 58/292 deed. The *Loveridge* plaintiffs' motion for partial summary judgment regarding the scope of the Brighton Mills 58/292 deed is granted, and the government's motion for partial summary judgment is denied.

### E.     The Hannah 72/549, Wheeler 16/2, and Beals Land Co. 18/41 Source Deeds

The Hannan 72/549 source deed states

> Together with all and singular, the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof.

> TO HAVE AND TO HOLD, all and singular, the said premises together with the appurtenances unto the said[]party of the second part and unto its successors and assigns forever. And the parties of the * * * first part hereby covenant to and with the party of the second part[,] its successors and assigns forever, that the parties of

> the first part, [sic] are the owners in fee simple of the tract of land a
> bove [sic] described, and the whole thereof, that said premises are
> fee from all incumbrances, and that the parties of the first part, their
> heirs, executors and administrators shall warrant and forever defend
> the above described and granted premises and every part and parcel
> thereof against the lawful claims and demands of all persons
> whomsoever.

*Loveridge*, 139 Fed. Cl. at 155. The Wheeler 16/2 deed conveyed a "right of way . . .

being 30 feet on each side of and parallel with the center line of the grantee's railway as

the same is surveyed, staked out, located, and adopted . . . To Have and to Hold to the

above named grantee and to its successors and assigns forever." *Id*. at 190. The Beals

Land Co. 18/41 deed conveyed a right of way "thirty (30) feet on each side of the center

line of the railway of the grantee . . . To Have and to Hold unto the above-named grantee

and to its successors and assigns forever." *Id.* at 136-137.

Recognizing that the easements do not expressly reference railroad use or limit the

scope of the easement in any other way, the plaintiffs argue that the parties would have

contemplated that the easement being conveyed was for only railroad purposes. *Albright*

Pls.' Resp. at 5; *Loveridge* Pls.' Resp. at 18. In particular, the plaintiffs argue that

because the deeds convey "a narrow strip of land to a railroad corporation pursuant to the

railroad's survey, which was already literally staked out across [the grantors'] land," the

parties intended to limit the deeds' scope to railroad purposes. *Albright* Pls.' Resp. at 5.

In addition, the plaintiffs argue that because the language in the deeds reference a "right

of way" and convey this right of way to the Railroad, the easements must be limited in

purpose to railroad uses. Tr. 46:16-22.

The government argues that these deeds were unambiguously granted in general and unlimited terms. *See Albright* Def.'s Mot. at 5. The government argues that because the deeds were general and unlimited, the only question is whether railbanking and trail use are reasonable uses or will cause a substantially increased burden on the plaintiffs. *Id.* at 5-6. In this context, the government contends that railbanking and trail use are reasonable and do not cause a substantial increase in burden from an operating railroad. The court must "discern the nature and scope of the easement's purpose and to give effect to that purpose in a practical manner." *Tressel*, 420 P.3d at 35 (quoting *Watson*, 973 P.2d at 400). If there is a clear expression of the easement's purpose, the analysis ends. *Watson*, 973 P.2d at 400. In addition, Oregon law requires that where "an easement is granted in general and unlimited terms, unrestricted reasonable use will be deemed to be intended by the parties." *Criterion Interests*, 902 P.2d at 113.

Upon review of the deeds in their entirety, there is no clear expression of purpose in the deeds. The court agrees with the government that the Hannan 72/549, Wheeler 16/2, and Beals Land Co. 18/41 source deeds are unambiguously broad right of way deeds with no language restricting the purpose to which the right of way may be used. Indeed, the court previously stated that "there was no limitation on the use of the land for railroad purposes only nor a right of reverter if the railroad discontinued railroad use, and there was no requirement for the railroad to build structures such as crossings, cattle guards, or fences to protect the grantor's land." *Loveridge*, 2019 WL 495578 at *54 (Hannan 72/549); *see id.* *50 (explaining that the Beals land deed contained "no

limitation on the use of the land for railroad purposes only"),[13] *id.* at *58 (explaining that there "was no limitation on the use of land for railroad purposes only" in the Wheeler 16/2 deed).

Oregon law does not support the plaintiffs' argument that conveying a "right of way" to a railroad company is sufficient to limit an easement to railroad purposes only. *See* Tr. 46:16-22. The "usual and ordinary" meaning of a right of way in Oregon is merely the "right to pass over the land of another." *See State v. Pacific Shore Land Co.*, 269 P.2d 512, 517 (Or. 1954); *see also* Or. Rev. Stat. § 105.170(1) (defining an easement as a "nonpossessory interest in the land of another which entitles the holders of an interest in the easement to a private right of way, embodying the right to pass across another's land"). Although the use of "right of way" indicates that an easement was conveyed rather than a fee, Oregon courts have not implied a limited railroad purpose based on this language alone. *See Cappelli v. Justice*, 496 P.2d 209, 213 (Or. 1972) (finding that where a deed "conveys only 'A right of way 30 feet in width' . . . the term 'right of way' signifies an easement" and "courts have generally construed the term [right of way] in accordance with common usage"). The fact that the deeds were conveyed to a railroad company is insufficient to further imply a limited purpose for railroad use only. While the Oregon Supreme Court has considered the limited purpose of a right of way easement where the deed's language specifically conveyed "a right of way *for a*

---

[13] Although the deeds refer to the bounds of the easement in reference to the railway, this is not a statement of purpose akin to those in Carstens 72/530, Turner 72/528, Portland Timber 107/610, and Byrom 5/310 deeds which identify the specific rights conveyed to the grantee in the habendum clause and provide terms limiting the grantee's future use.

*railroad*," *see Bernards*, 248 P.2d at 342 (emphasis added), the deeds at issue here are broad, unambiguous, and contain no language further limiting the right of way for use as a railroad or referencing an intent by the grantee to use the easement for railroad purposes.

The court further finds the plaintiffs' argument that because the conveyance is to the Railroad and its "successors and assigns" the scope should be read as limiting the easement's use to railroad purposes only is without merit. *See Albright* Pls.' Resp. at 12 (citing *East Alabama Ry. Co. v. Doe*, 114 U.S. 340, 350-51 (1885)). In *East Alabama* the Supreme Court concluded that it would violate both the "intention of the grantors in the deeds" and "the manifest purpose of the legislature of Alabama to permit a private person to seize and appropriate" a right of way originally conveyed to a railroad company such that the "grant to the 'assigns' of the corporation cannot be construed as extending to any assigns except one who should be the assignee of its franchise to establish and run a railroad." 114 U.S. at 350-51. This case is inapplicable here for two reasons. First, the language of the deeds is different. The deeds in *East Alabama* were granted "particularly for the purpose of running, erecting, and establishing thereon a railroad with requisite tracks." 114 U.S. at 343. Based on this language, the Supreme Court concluded that the right granted was "a right of way for a railroad." *Id.* at 351. The deeds here do not have such specific language limiting the purpose of the deed. Second, the Supreme Court applied Alabama law to conclude that the deeds conveyed a limited easement because under *Alabama* law, "a railroad company acquired no absolute title to land in fee simple, but only a right to use for its purposes." *Id.* at 352. The plaintiffs have not identified any

28

analogous law in Oregon. Indeed, the Oregon Supreme Court held that easements conveyed to a railroad are *not* limited to railroad use only in cases where the deed conveyed an easement to a railroad company and "its successors and assigns." *See Bernards*, 248 P.2d at 345-47 (considering the use of an easement by a lumber company that was originally conveyed to a railroad to be within the scope of the original easement). Oregon law therefore does not support plaintiffs' argument that the "successors and assigns" language is dispositive of the purpose of these easements.

Having concluded that the Hannan 72/549, Wheeler 16/2, and Beals Land Co. 18/41 deeds conveyed broad and unambiguous right of way easements to the Railroad, the court turns to whether railbanking and trail use fall within the scope of general right of way easements permitting the grantee the right to cross or impose too great a burden on the grantor. *See Motes*, 217 P.3d at 1078. The government argues that the changed use from railroad to trail "does not substantially increase the burden on the servient estate." *Albright* Def.'s Mot. at 8 (quoting *Motes*, 217 P.3d at 1078). In support, the government explains that the Oregon Court of Appeals has found that an access easement for agricultural purposes can be used for access for recreational purposes where there is no limit on purpose of the right of way. *Id.* (citing *Criterion Interests*, 902 P.2d at 112-13); *see Cal-Neva Land & Timber Inc. v. United States*, 70 F. Supp. 2d 1151, 1158 (D. Or. 1999) ("With unlimited purposes come unlimited uses.").

The court agrees with the government that under Oregon law's "reasonable use" standard, railbanking and trail use fall within the terms of these unambiguously broad easements. *See Criterion Interests*, 902 P.2d at 112-13. Plaintiffs have not submitted any

evidence to show that the recreational use associated with railbanking and trail use is

unreasonable or unreasonably burdensome. Therefore, the court grants the government's

motions for partial summary judgment and finds that railbanking and trail use are within

the scope of the Hannan 72/549, Wheeler 16/2, and Beals Land Co. 18/41 deeds and

denies the plaintiffs' motions for partial judgment regarding the scope of these deeds.

### F.    The Mendenhall 72/550 and Western Timber Co. 77/108 Source Deeds

The Mendenhall 72/550 deed conveyed a right of way but required that the grantee

would "perpetually maintain lawful fences on each side of the said Right of Way."

*Loveridge*, 139 Fed. Cl at 167-68. The Western Timber Co. 77/108 deed conveyed an

easement "Together with the tenements, hereditaments and appurtenances thereunto

belonging, or in anywise appertaining" but reserved to the grantor "the right to cross said

right of way at any point or points where such crossing is desired." *Id.* at 188-89.

The plaintiffs argue that the scope of the Mendenhall deed is limited to railroad

purposes because the deed requires the installation of a fence along the land and conveys

a right of way. *See Loveridge* Pls.' Resp. at 22-23. Similarly, the *Stimson Lumber*

plaintiffs argue that the reservation in the Western Timber Co. 77/108 deed for the

grantor to cross suggests a scope of railroad purposes only. *See Stimson Lumber* Pls.'

Resp. at 11 ("The scope of [the Western Timber Co. 77/108] deed is obviously limited to

railroad purposes.").

The government argues that the deeds were unambiguously granted in general and

unlimited terms. *See Loveridge* Def.'s Mot. at 7. Without the limiting language, the

government argues that the deeds are unambiguously broad and that the scope is limited to any reasonable use of the easement as a right of way.

As discussed earlier, the court "discern[s] the nature and scope of the easement's purpose" and "give[s] effect to that purpose in a practical manner." *Tressel*, 420 P.3d at 35 (quoting *Watson*, 973 P.2d at 400). If there is a clear expression of the easement's purpose, the analysis ends. *Watson*, 973 P.2d at 400. In addition, Oregon law requires that where "an easement is granted in general and unlimited terms, unrestricted reasonable use will be deemed to be intended by the parties." *Criterion Interests*, 902 P.2d at 113.

The court agrees with the government that the language in the above deeds broadly conveyed a right of way. The deeds are unambiguous and do not contain language limiting the purpose to which the right of way may be used. The requirement to install a fence in the Mendenhall 72/550 deed is not a limit on the purpose of the easement. Unlike the Wright-Blodgett 15/493, Wright-Blodgett 105/393, and DuBois Lumber Co. 23/298 source deeds, which all reference the grantee's intended *use* of the easement for railroad purposes, this language does not indicate how the parties intended the easement would be used. Without more, the requirement to build a fence does not itself create a railroad purpose. The court finds that the "purposes for which the grantee may invoke its right[s]" under the deed are "left unrestricted." *See Criterion Interests*, 902 P.2d at 113. Similarly, the reservation to the grantor to cross the easement in the Western Timber Co. 77/108 deed may limit the reasonable use of the easement, but it does not limit the grantee's use of the easement to railroad purposes only.

Having found the language in the deeds is unambiguous and broadly conveys right of way easements, the court considers whether railbanking and trail use are considered reasonable or substantially increase the burden on the grantors. *See Motes*, 217 P.3d at 1078. The plaintiffs have not submitted any evidence to show that use of the right of way for rail banking and trail use would be unreasonable or would substantially increase the burden on grantors. Therefore, the plaintiffs' motions for partial summary judgment in connection to the scope of the Mendenhall 72/550 and Western Timber Co. 77/108 deeds are denied, and the government's motions for partial summary judgment are granted.

## CONCLUSION

For the reasons discussed above, the plaintiffs' motions for partial summary judgment regarding the scope of deeds are **GRANTED-IN-PART** and **DENIED-IN-PART**. The government's motions for partial summary judgment are **GRANTED-IN-PART** and **DENIED-IN-PART**.

Specifically, the plaintiffs' motions for partial summary judgment regarding the Carstens 72/530, Turner 72/528, Wright-Blodgett 15/493, Wright-Blodgett 105/393, Byrom 5/310, DuBois Lumber Co. 23/298, and Brighton Mills 58/292 deeds are **GRANTED** and the government's motions for partial summary judgment are **DENIED**. The court finds that railbanking and interim trail use are outside the scope of these deeds. The plaintiffs' motions for partial summary judgment regarding the Hannan 72/549, Wheeler 16/2, Beals Land Co. 18/41, Mendenhall 72/550, and Western Timber Co. 77/108 deeds are **DENIED** and the government's motions for partial summary judgment are **GRANTED**. The court finds that railbanking and interim trail use are within the

scope of these deeds. Finally, as discussed in footnote 3, the government's motion for partial summary judgment regarding the Portland Timber Co. 107/61 is **DENIED**.

The court will next turn to the remaining issues in the pending motions for partial summary judgment including: (1) where plaintiffs have not identified a source deed, whether under Oregon law the Railroad is presumed to have acquired a fee or only an easement; (2) whether under Oregon law the plaintiffs are presumed to own to the centerline of the POTB's easement where there is an intervening road between the plaintiffs' property and the easement; and (3) whether under Oregon law the United States is liable for imposing a new easement on the properties already encumbered by an easement or whether the easements were terminated prior to the alleged taking. The court will schedule oral argument regarding these issues later this month.

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge