# In the United States Court of Federal Claims

No. 16-912L and
No. 16-1565L and No. 18-375L Consolidated
No. 18-983L
(Filed: September 18, 2020)

| | |
|---|---|
| PERRY LOVERIDGE, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Motion for Summary Judgment; Rails-to-Trails; Oregon Law; State Law Abandonment |
| THE UNITED STATES, | ) |
| Defendant. | ) |
| ALBRIGHT, et al., | ) |
| Plaintiffs, | ) |
| and | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |
| STIMSON LUMBER COMPANY, | ) |
| Plaintiff, | ) |
| and | ) |
| THE UNITED STATES, | ) |
| Defendant | ) |

*Thomas S. Stewart*, Kansas City, MO, for *Loveridge* and *Stimson Lumber* plaintiffs. *Elizabeth G. McCulley*, Kansas City, MO, of counsel.

*James H. Hulme*, Washington DC for certain *Albright* and *Aeder* plaintiffs. *Laurel LaMontagne*, *Morgan Pankow*, Washington DC, of counsel.

*David W. Gehlert*, Environment and Natural Resources Division, United States Department of Justice, Washington DC, with whom was *Jean E. Williams*, Deputy Assistant Attorney General, for defendant.

## OPINION

**FIRESTONE**, *Senior Judge*.

Pending in these Oregon Trails Act[1] cases are the parties' cross motions for partial summary judgment concerning five deeds[2] that the court previously held conveyed easements to the railroad that were broad enough to encompass railbanking and trail use. The issue now before the court is whether a taking nonetheless occurred because the railroad holding these easements had abandoned them under Oregon law. Because the plaintiffs have not shown that the railroad abandoned the easements for all purposes, plaintiffs' motions for partial summary judgment are **DENIED**, and the government's cross motion is **GRANTED.**

---

[1] The Trails Act "preserve[s] shrinking rail trackage by converting unused rights-of-way to recreational trails." *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 5 (1990). One of the court's prior opinions contains an explanation of the Trails Act. *See Loveridge v. United States*, 139 Fed. Cl. 122, 127-29 (2018).

[2] The relevant deeds are the Wheeler 16/2 deed, the Beals Land Co. 18/41 deed, the Mendenhall 72/550 deed, the Western Timber Co. 77/108 deed, and the Hannan 72/549 deed. *See Loveridge* Def.'s Cross-Mot. at 1 n.1, ECF No. 121.

2

I.      BACKGROUND

The history of these cases has been discussed at length in the court's prior opinions, *see, e.g.*, *Loveridge v. United States*, 139 Fed. Cl. 122 (2018), *recons. partially granted*, 2019 WL 495578 (2019), and will only be briefly repeated as relevant here.  The following facts are undisputed.

The plaintiffs in these related cases claim they are entitled to just compensation under the Fifth Amendment for a taking of their property in connection with the creation of the Salmonberry Trail in Oregon.  The Salmonberry Trail was established under the National Trails System Act, 16 U.S.C. § 1247(d), after the Port of Tillamook Bay Railroad ("POTB") ceased operations over portions of its railways.  *Loveridge v. United States*, 149 Fed. Cl. 64, 68 (2020).  On May 26, 2016, the POTB filed with the Surface Transportation Board ("STB") its Notice of intent to abandon the rail line.  *See Loveridge* Mot., Ex. A at 1.  In this Notice, the railroad indicated that the rail line "suffered catastrophic damage due to severe storms, making it impossible to provide service over the Subject Line" since December 2007.  *Id.* at 2.  The railroad stated that it "does not believe that it will be able to obtain the necessary funding to repair and rehabilitate the line" and that, accordingly, the railroad gave "notice of its intent to terminate service over (fully abandon) the Subject Line."  *Id.*  This Notice was going to be effective on July 28, 2016.  *Id.* at 1.

Publicly available financial records auditing the POTB's 2016-2017 financial position confirm that in the spring of 2009, the POTB had decided not to pursue repairs to track damaged in the 2007 storm.  *Id.*, Ex. F at 7.  These records also explain that an

3

inter-governmental agreement between the POTB and the State of Oregon formed the Oregon Tillamook Railroad Authority ("OTRA") in April 1993, the purpose of which was to bring the railroad up to certain track safety standards. *Id.*, Ex. G at 41. The records note that this goal was unlikely to be achieved given the 2007 storm damage and that the organization was disbanded in 2014. *Id.* These records also state that the POTB was working with the Oregon government to develop a "Master Plan" for the Salmonberry Trail over portions of the rail line. *Id.*, Ex. F at 7. To this end, in 2015, the POTB entered into an agreement with numerous Oregon governmental entities to establish the Salmonberry Trail Intergovernmental Agency ("STIA"), to construct a multi-use trail over the "former railroad line between Banks and Tillamook." *Id.*, Ex. H. at 1, 6.

On June 7, 2016, the STIA filed with the STB a Trail Use Request for the portions of the rail line at issue here. *Id.*, Ex. B. On July 1, 2016, the POTB acknowledged the request from the STIA to negotiate a Trail Use Agreement and indicated the railroad's willingness to do so. *Id.*, Ex. C at 1. Accordingly, on July 25, 2016, the railroad submitted another letter to the STB in which it voluntarily extended the effective date of its Notice until August 31, 2016. *Id.*, Ex. D at 1.

The STB authorized the creation of the Salmonberry Trail in a Notice of Interim Trail Use ("NITU") dated one day later, July 26, 2016. *Id.*, Ex. E. The NITU granted the STIA's request to negotiate a Trail Use Agreement. *Id.* at 2. A final trail use and railbanking agreement was reached between the POTB and the STIA on October 27, 2017. *Loveridge v. United States*, 148 Fed. Cl. 279, 283 (2020). A follow-on trail use

agreement between the POTB and STIA indicates that the POTB retained the right to administer existing third party use agreements for use of or access to a portion of the trail. Def.'s Cross-Mot., Ex. A at 3-4, ECF No. 121-1.

The plaintiffs in these cases claim to own property underlying the POTB's railroad right of way and assert that the creation of the Salmonberry Trail gave rise to a taking of their property under the Fifth Amendment. In prior decisions, the court determined that the five deeds relevant to this opinion conveyed broad easements to the POTB's predecessor with no language restricting the purposes for which the right of way easements may be used, and that Oregon law therefore permitted future use of these easements as a trail.[3] *Loveridge v. United States*, 148 Fed. Cl. at 291-95. As such, the court concluded that the plaintiffs could not establish that a taking had occurred with regard to the parcels associated with these five deeds. *See id.*

The plaintiffs in *Loveridge v. United States* and *Stimson Lumber v. United States*, joined by certain plaintiffs in *Albright v. United States* (consolidated with *Aeder v. United States*), have now filed another round of summary judgment motions. These plaintiffs argue that, under Oregon law, the POTB abandoned the broad easements conveyed by the five deeds before the issuance of the NITU, and for this alternative reason a taking has occurred for nine parcels associated with the five deeds. *Loveridge* Mot. at 1 & n.3, ECF

---

[3] Plaintiffs suggest in a footnote that the court misapplied Oregon law in so holding by failing to discern the grantors' intent. *Loveridge* Mot. at 2 n.4. The court discussed this issue in its prior decision. *Loveridge*, 148 Fed. Cl. at 285 ("[U]nder Oregon law if 'an easement is granted in general and unlimited terms, unrestricted reasonable use will be deemed to be intended by the parties.'" (quoting *Criterion Interests, Inc. v. Deschutes Club*, 902 P.2d 110, 113 (Or. Ct. App. 1995))).

No. 115 (listing four parcels); *Stimson* Mot. at 1 & n.3, ECF No. 33 (listing three parcels); *Albright* Mot. at 1 & n.1, ECF No. 152 (listing two parcels). In support, the plaintiffs point to the POTB's statements in its correspondence with the STB that the POTB intended to terminate service over the relevant portions of the railway, the POTB's conduct prior to the issuance of the NITU in deciding not to repair the railway track after the 2007 storm damage, and the POTB's decision to negotiate a trail use agreement with the STIA. *Loveridge* Mot. at 6-10.[4]

The government responds that plaintiffs have failed to produce evidence that the POTB abandoned the broad easements at issue for all purposes. The government contends that, at best, the plaintiffs' evidence demonstrates that the POTB abandoned only certain railroad uses of the easements. *Loveridge* Def.'s Cross-Mot. at 3-8, ECF No. 121.[5] The government also argues that the plaintiffs' evidence demonstrates that the railroad in fact intended to retain the easements. *Id.*

In reply, the *Loveridge and Stimson* plaintiffs, joined by certain plaintiffs in *Albright* and *Aeder*, argue that any other uses of the easements are "irrelevant as a matter

---

[4] The plaintiffs' motions for summary judgment in *Loveridge* and *Stimson* make essentially identical arguments, and the relevant *Albright*/*Aeder* plaintiffs have joined in the brief filed by the *Loveridge* plaintiffs. The court will therefore cite only the *Loveridge* motion throughout this opinion.

[5] The government filed identical cross motions for summary judgment in response to the *Loveridge* (joined by the relevant *Albright*/*Aeder* plaintiffs) and *Stimson* motions. The court will therefore cite only the government's cross motion for summary judgment in *Loveridge* throughout this opinion.

of law." *Loveridge* Reply at 4, ECF No. 122.[6] The plaintiffs contend that they have shown that the POTB abandoned its use of the easements for rail service and that, at that point, all potential uses were "extinguished." *Id.* at 6. To hold otherwise, the plaintiffs contend, would mean "there could never be any liability" under a pre-NITU abandonment theory for broad easements that are not limited to railroad purposes "and utilization of the Trails Act would be completely unnecessary." *Id.* at 6-7.

The government did not file a reply in support of its cross motion.

Oral argument was held on September 9, 2020.

## II.  LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Rules of the United States Court of Federal Claims; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine dispute is one that "may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. A fact is material if it "might affect the outcome of the suit." *Id.* at 248. The moving party bears the initial burden of establishing that there is no genuine dispute as to any material fact, and any doubt over factual issues will be resolved in favor of the non-moving party. *See Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). Once the moving party has supported its motion, the burden shifts to the non-moving

---

[6] The replies filed in *Loveridge* (joined by the relevant *Albright*/*Aeder* plaintiffs) and *Stimson* are identical. The court will therefore cite to only the *Loveridge* reply throughout this opinion.

7

party to identify specific facts on which a genuine disputes exists for trial. *Anderson*, 477 U.S. at 250. "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994). When both parties move for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus*, 812 F.2d at 1391.

    **B.**    **Fifth Amendment Taking Under the Trails Act**

The Federal Circuit has identified three primary questions to determine whether a taking has occurred under the Trails Act:

> (1) who owns the strip of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate; (2) if the railroad acquired only an easement, were the terms of the easement limited to use for railroad purposes, or did they include future use as a public recreational trail (scope of the easement); and (3) even if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time held a fee simple unencumbered by the easement (abandonment of the easement).

*Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009).

For the five deeds at issue, the court has already answered the first and second questions, holding that the deeds granted broad easements that allowed for future use of the right of way as a trail. *See Loveridge*, 148 Fed. Cl. at 291-95. The pending motions for summary judgment involve the third question. That is, for the five deeds at issue that

8

conveyed broad easements that the court found were not limited to railroad purposes only, were these easements abandoned and therefore terminated prior to the issuance of the NITU, such that the property reverted back to the underlying fee owners and a taking has occurred.

### C.   Abandonment Under Oregon Law

As the court has previously explained, the property rights of the parties in this case are analyzed under Oregon law. *Loveridge v. United States*, 149 Fed. Cl. at 70. Under Oregon law, an easement can be terminated by consent, prescription, abandonment, or merger. *Cotsifas v. Conrad*, 905 P.2d 851, 852 (Or. Ct. App. 1995). "A party claiming abandonment [of an easement] must show in addition to non-use 'either [a] verbal expression of an intent to abandon or conduct inconsistent with an intention to make further use.'" *Conner v. Lucas*, 920 P.2d 171, 174 (Or. Ct. App. 1996) (quoting *Abbott v. Thompson*, 641 P.2d 652, 654 (Or. Ct. App. 1982) (alterations in original)); *see also Wiser v. Elliot*, 209 P.3d 337, 341 (Or. Ct. App. 2009). The party alleging abandonment must demonstrate abandonment by "clear and convincing evidence." *Johnston v. Cornelius*, 218 P.3d 129, 135-36 (Or. Ct. App. 2009). The Oregon Court of Appeals has noted that "the courts rarely find [intent to abandon], and when they do it is because the acts manifesting the intent have so fundamentally changed the landscape that further use of the easement is deemed impossible." *Shields v. Villareal*, 33 P.3d 1032, 1035 (Or. Ct. App. 2001).

### III. DISCUSSION

Applying these standards, the court holds that the plaintiffs have not met their burden to show by clear and convincing evidence that the POTB abandoned the easements at issue. As an initial matter, the court agrees with the government that the plaintiffs must demonstrate that the POTB abandoned all uses of the easements under Oregon law. The Oregon Court of Appeals has recognized that abandoning railroad use of a right of way easement does not necessarily abandon the easement for all other reasonable purposes. In *Wiser v. Elliot*, 209 P.3d at 340, the plaintiffs argued in support of their claim of ownership of a railroad right of way that the railroad "easements terminated when the railroad abandoned the properties . . . ." In support, the plaintiffs presented a letter "from the railroad to the State Tax Commission that the railroad abandoned the 'operating purposes' use of the properties for a railroad line" and had removed tracks from the line. *Id.* at 341. The Oregon Court of Appeals held that this conduct was not enough to demonstrate abandonment because it "revealed only an intent to use the properties for 'non-operating' purposes, rather than an intent to not use the properties at all." *Id.* at 342. Oregon law therefore recognizes that the abandonment of the railroad use of a property interest does not necessarily abandon the entire property interest. Earlier Oregon cases likewise recognize that an owner must intend to abandon all uses authorized by an easement in order to find that the easement has been abandoned. *See Bernards v. Link*, 248 P.2d 341, 345 (Or. 1952) ("The intention required in the abandonment of an easement is the intention not to make in the future the *uses authorized by it*." (quoting Restatement of the Law, Property, § 504) (emphasis added)).

10

This court's precedent is also consistent with this principle.  Applying New York law, this court has previously recognized that an intent to abandon the use of an easement for railroad purposes is not sufficient to establish an intent to abandon other purposes allowed under the easement.  *Romanoff Equities, Inc. v. United States*, 119 Fed. Cl. 76, 83 (2014), *aff'd* 815 F.3d 809 (Fed. Cir. 2016).[7]  In *Romanoff Equities*, after having determined that the easement at issue encompassed trail use, the court was faced with the question of "whether the corridor had been abandoned by the railroad prior to the issuance of the CITU, in which case there may still be a taking." *Id.* at 83.  The court held that the railroad had not abandoned the easement even though it was no longer being used for railroad purposes because the easement was "broad enough to encompass any use desired by the grantee." *Id.*  Although *Romanoff Equities* applied New York law, the same rationale applies here:  where an easement authorizes more than railroad use, the cessation of railroad use only does not abandon the easement.  The court thus holds that, in this case, the plaintiffs must demonstrate that the POTB abandoned its easements for all uses prior to the issuance of the NITU to demonstrate that a taking has occurred.

The plaintiffs have failed to so.  The plaintiffs have presented some evidence that the subject easements may not have been used for railroad purposes in the years

---

[7] The plaintiffs state in their reply that *Romanoff Equities* addressed only the question of the scope of the easement and "did not involve any aspect of" the third *Ellamae Phillips* question at issue here. *Loveridge* Reply at 6.  Contrary to this assertion, the court in *Romanoff Equities* explicitly addressed the issue of whether the subject easement had been abandoned by the railroad prior to the creation of the trail.  119 Fed. Cl. at 78 (describing the parties' arguments), 81 (describing the third *Ellamae Phillips* question), 83 (determining "whether the corridor had been abandoned by the railroad prior to the issuance of the CITU").

immediately prior to the issuance of the NITU. However, as discussed below, the plaintiffs have not provided clear and convincing evidence that the POTB intended to entirely abandon the easements for all purposes through either "a verbal expression" of such an intent or "conduct inconsistent with an intention to make further use" of the easements, as required by Oregon law. *Wiser,* 209 P.3d at 341-42 (quotation omitted).

The plaintiffs rely first on the POTB's May 26, 2016 Notice to the STB, in which the POTB expressly stated its intent to abandon rail service over the relevant segment of the line. *Loveridge* Mot. at 6-7. However, this Notice does not demonstrate that the POTB intended to abandon all uses of the easements. Rather, the Notice and related correspondence with the STB demonstrate only that the POTB intended to cease certain railroad operations over the subject corridor. *Loveridge* Mot., Ex. A at 2 (stating in the Notice that it was "impossible to provide service over the Subject Line" and that POTB was giving notice "of its intent to terminate service over" the line). The Notice is analogous to the letter in *Wiser* abandoning the "operating purposes" use of the rail line only. The Oregon Court of Appeals has expressly held that such a statement is insufficient to demonstrate abandonment. *Wiser*, 209 P.3d at 340-42.

The POTB's pre-NITU conduct also does not demonstrate an intent to abandon the easements for all purposes. Plaintiffs rely on the POTB's 2009 decision not to repair the railroad tracks after the 2007 storm damage, *Loveridge* Mot. at 7, the disbanding of the OTRA in 2014, *id.* at 7-8, references to the "former railroad line" in the Salmonberry Trail Interagency Agreement, *id.* at 8, and the POTB's decision to enter into trail use negotiations, *id.* at 9. The court agrees with the government that this conduct does not

demonstrate that the POTB intended to abandon the easements for all uses. *Loveridge* Def.'s Cross-Mot. at 5-8. For example, the POTB's decision not to repair the railroad tracks signals an intention, at most, to discontinue rail service along the subject line, not to abandon the easements entirely. *See Romanoff*, 119 Fed. Cl. at 83 (holding that whether tracks are functioning or not is "irrelevant" to intent to abandon a broad easement); *Wiser*, 209 P.3d at 341-42 (holding that the removal of tracks and letter abandoning the "operating purposes" of the railroad line is insufficient). Likewise, that the OTRA's oversight of the POTB's rail operations ended in 2014 speaks to only the railroad purposes of the easement; the "assets . . . of the railroad" remained with the POTB. *Loveridge* Mot., Ex. at G at 41.

Moreover, some of the evidence presented by the plaintiffs is inconsistent with an intent by the POTB to abandon its broad easements. The POTB was a participant in the 2015 Salmonberry Trail Interagency Agreement to "plan the development and maintenance of a multi-use trail." *Loveridge* Mot., Ex. H at 2. Participation in this agreement is conduct inconsistent with an intent to entirely abandon the easements. *See Romanoff*, 119 Fed. Cl. at 83 (railroad's participation in negotiations regarding creation of the trail is evidence that the railroad did not intend to abandon a broad easement). In addition, the Salmonberry Trail Rail Line Lease Agreement between the STIA and the POTB specifically states that the POTB had "entered into third party contracts affecting the" right of way prior to that agreement and that the POTB retained the right to administer and renew these existing use agreements. *Loveridge* Def.'s Cross-Mot., Ex. A at 3-4. These use agreements granted third parties limited non-ownership rights to use or

access the easements, such as "right of way use agreements, rail line use agreements, licenses, easements, real property agreements, crossing agreements, encroachment agreements, or permits and other agreements pertaining to [the] rail line." *Id.* at 3.  For example, the POTB retained the right to administer and renew certain right of way leases for telephone cables or fiber optic utility lines.  *Id.* at 38-39 (Exhibit C to the Salmonberry Trail Rail Line Lease Agreement).  These existing use agreements between the POTB and third parties suggest that the POTB intended to retain (and continues to retain) an interest in the easements prior to the establishment of the Salmonberry Trail, conduct inconsistent with an intent to entirely abandon the easements. *See Romanoff*, 119 Fed. Cl. at 83.  For these reasons, the court concludes that the plaintiffs have failed to demonstrate under Oregon law that the POTB abandoned the broad easements at issue in these motions.

Contrary to plaintiffs' contention, the Oregon Supreme Court case *Powers v. Coos Bay Lumber Co.*, 263 P.2d 913, 943 (Or. 1953), does not demonstrate otherwise.  The plaintiffs cite *Powers* to support the argument that the POTB's "decision in 2009 against pursuing repairs of the damaged railroad in addition to the disbanding of [the OTRA] in 2014, is conduct wholly inconsistent with an intention to make further use of the easement." *Loveridge* Mot. at 8. *Powers* addressed multiple segments of an easement which allowed for both railroad and road use.  The railroad bed had been removed from the line, and most of the segments had been replaced by a gravel road.  The Oregon Supreme Court held that the segments of the easements replaced by the gravel road had not been abandoned, but those that were not part of the gravel road had been, because the

14

railroad "freely conceded" that it would "never again" use those easements. *Powers*, 263 P.2d at 940-43. There is no similar concession here by the POTB. Moreover, *Powers*, like *Wiser*, recognizes that the end of rail use does not abandon an easement capable of being used for other purposes.

Plaintiffs also argue that a holding in favor of the government would mean that "there could never be any liability under" a theory of pre-NITU abandonment "involving a broad easement." *Loveridge* Reply at 6-7. The court disagrees. The POTB could have abandoned its easements for all purposes prior to expressing its interest in entering into a trail use agreement. *See, e.g.*, *Powers*, 263 P.2d at 940-43. The plaintiffs in their briefing have attempted to show by clear and convincing evidence that, prior to the actions of the STB, the POTB had intended to do so under Oregon law. However, as discussed above, the record does not support that argument, and in fact demonstrates the opposite.[8] As a result, the court must conclude that the easements for the deeds at issue were not abandoned. Summary judgment in favor of the government, as a matter of law, is therefore warranted.

---

[8] The plaintiffs also appeared to, at oral argument, contend that the Supreme Court's decision in *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1 (1990) ("*Preseault I*") supports their position. In *Preseault I*, the Supreme Court upheld the constitutionality of the Trails Act under the Commerce Clause and held that when railroad rights of way are converted to interim public trail use under the Act, the Trails Act taking of private property cannot occur without just compensation. *Id.* at 11-17; *Caldwell v. United States*, 391 F.3d 1226, 1228 (Fed. Cir. 2004). However, only some rails-to-trails conversions will amount to takings, as the Federal Circuit recognized in *Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996), and *Ellamae Phillips*, 564 F.3d at 1373. As explained above, the court has analyzed the deeds at issue in accordance with the framework set out by the Federal Circuit in *Ellamae Phillips*, 564 F.3d at 1373, and this analysis is not inconsistent with the general principles announced in *Preseault I*.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motions for partial summary judgment, *Loveridge*, ECF No. 115; *Stimson*, ECF No. 33; *Albright*, ECF No. 152, are **DENIED** and the government's cross motion, *Loveridge*, ECF No. 121; *Stimson*, ECF No. 37; *Albright*, ECF No. 156, is **GRANTED**.  The parties are directed to file a joint status report in these cases by **October 1, 2020** proposing further proceedings in this matter.

**IT IS SO ORDERED**.

s/Nancy B. Firestone<br>
NANCY B. FIRESTONE<br>
Senior Judge